UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SIDNEY ROSS DEEGAN, III,

Plaintiff,

v.

SACRAMENTO COUNTY et al.,

Defendants.

No.  2:24-cv-02471-SCR P

ORDER

Plaintiff, a pretrial detainee at Rio Cosumnes Correctional Center ("RCCC"), proceeds without a lawyer in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff's complaint is before the undersigned for screening pursuant to 28 U.S.C. § 1915A.  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1919A(b)(1); (2).

**IN FORMA PAUPERIS**

Plaintiff has requested leave to proceed without paying the full filing fee for this action, under 28 U.S.C. § 1915. ECF No. 6. Plaintiff has submitted a declaration showing that he cannot afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's motion to proceed in forma pauperis is granted.  This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that are taken from the inmate's trust account rather than in one

1

lump sum.  28 U.S.C. §§ 1914(a).  As part of this order, the prison is required to remove an initial partial filing fee from plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to CDCR requires monthly payments of twenty percent of the prior month's income to be taken from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid in full.  See 28 U.S.C. § 1915(b)(2).

### STATUTORY SCREENING OF PRISONER COMPLAINTS

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  See Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless.  See id. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim must also have facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

2

**PLAINTIFF'S COMPLAINT**

The events underlying plaintiff's complaint occurred while plaintiff was a pretrial detainee at Sacramento County Main Jail ("SCMJ") and RCCC.  ECF No. 1 at 16, 18.  Plaintiff names five defendants: (1) Sacramento County; (2) Doe Facility Commander at SCMJ; (3) Doe Facility Commander at RCCC; (4) Defendant Sergeant ("Sgt.") Anderson; and (5) Defendant Chaplain Bell.  Id. at 20-23.  Plaintiff seeks to hold both Doe Facility Commanders, Sgt. Anderson, and Chaplain Bell liable in their official and personal capacities.  Id. at 24.

Plaintiff alleges that he is an Orthodox Jew, having converted while housed at High Desert State Prison ("HDSP").  Id. at 11 ¶ 57.  In accordance with his faith, plaintiff practices a kosher diet, which proscribes, among other things, the ingestion of blood.  Id. at 4 ¶ 10.  On May 25, 2024, while at SCMJ, plaintiff submitted a kite[1] to Chaplain Bell, informing the religious services that he is an Orthodox Jew and, accordingly, requesting accommodations for a kosher diet.  Id. at 6 ¶ 24, 25.  Plaintiff alleges that this kite, as well as subsequent similar kites, in which he also asked for a Torah, went unanswered.  Id. at 7 ¶ 26.  On July 1, 2024, plaintiff submitted a grievance regarding his unanswered requests for accommodation, which also went unanswered.  Id. ¶ 28.  On July 9, 2024, defendant Bell interviewed plaintiff for the kosher religious program.  Id. ¶ 30.  Defendant Bell questioned plaintiff, presumably to determine the authenticity of his Jewish faith, which conversation went as follows:

> **DEFENDANT BELL**: [asks what synagogue plaintiff goes to].
> **PLAINTIFF**: "I didn't because when I paroled, I had started using Methamphetamine, and would not disrespect a synagogue or Rabbi by showing up high."
> **DEFENDANT BELL**: "I am not going to approve you for the kosher diet if you did not go to a synagogue."
> **PLAINTIFF**: "Why does that matter? I don't have to go to a synagogue in order to follow the tenets of my faith."
> **DEFENDANT BELL**: [asks plaintiff who the Prophet was].
> **PLAINTIFF**: "Mohammed." [plaintiff "quickly corrected with"] "Moses."
> **DEFENDANT BELL**: "Who wrote the Torah?"
> **PLAINTIFF**: "Moses."

---

[1]  A "kite" is the name of the Sacramento County Sheriff Department Correctional Services message request form.

**DEFENDANT BELL**: "Which book in the Torah lays out the laws of the kosher diet?"

**PLAINTIFF**: "Leviticus."

**DEFENDANT BELL**: "You cannot be an Orthodox Jew because you are clean shaven."

**PLAINTIFF**: "You are correct it is a mitsvah law to harm a single hair with a razor, however, we can cut our hair with scissors … electronic shavers are considered scissors."

**DEFENDANT BELL**: "Have you heard of a Jewish ritual called 'A'bet'?"

**PLAINTIFF**: "No."

**DEFENDANT BELL**: "A'bet is a ritual that is performed in order to convert into an Orthodox Jew. If you are circumcised, then a Rabbi will slice your penis till he draws blood, and that is to symbolize the circumcision."

**PLAINTIFF**: "If that's true, then let's make that happen. What do we do to set that up, so I can have that ritual performed?"

**DEFENDANT BELL**: "We do not provide that service."

**PLAINTIFF**: "That's not my fault, that you don't provide that service."

…

**PLAINTIFF**: "[My] lack of knowledge doesn't speak to whether [I] [am] sincere in [my] beliefs."

Id. at 8-12 ¶¶ 34-63.

Plaintiff then informed defendant Bell that he converted while housed at HDSP through correspondence with Aleph Institute, that he observes Jewish High Holidays, including Passover, Shavout [*sic*], Rash Hashanah, Yom Kippur, and Sukkot, and eats evening seder meals with Matzah. Id. at 11-12 ¶¶ 58, 64, 65. In response, defendant Bell told plaintiff, "if Aleph confirms [you're] a Jew, [I'll] approve you but if they don't then [I] will not aprove [*sic*] [you] for a kosher diet." Id. at 12 ¶ 66. At the close of the interview, defendant Bell said to plaintiff, "if you did not worship God on the street I am not going to approve [*sic*] you." Id. ¶ 67.

On July 14, 2024, plaintiff filed another grievance regarding his kosher diet, and he learned that he was ultimately denied his religious accommodations for insincerity. Id. at ¶ 72, 73. Plaintiff alleges that "non-compliance with the kosher diet means a person's soul will be cut off from his people, his seed will be cut off and his days will be cut [illegible]."[2] Id. at 13 ¶¶ 116, 117. Due to being denied a kosher diet, plaintiff alleges that he has been forced to ingest blood, "has lost count of how many times he was sick to his stomach just from the thought of being

---

[2] Plaintiff's complaint was poorly scanned, resulting in the right hand text being cut off. Cut off text is indicated by "[illegible]."

4

forced to ingest blood," and "constantly weeps at night to himself [illegible] the knowing of the consequences of living in non-compliance with the koshruth [sic] mitsvuhs [sic]." Id. at 20 ¶¶ 124-127.

Plaintiff also alleges that he was set to start attending Narcotics Anonymous ("NA") on July 28, 2024, and he was first in line for custodial classes. Id. at 14 ¶¶ 83, 85. Moreover, he alleges he was "next in line to have his teeth cleaned and filled by Dental Services," and he was also "close in line to be seen by the opthomolagist [sic] to receive corrective lenses" "as Plaintiff is practically blind without glasses." Id. at 15 ¶¶ 88-89. Plaintiff additionally alleges that he was "on the list for the Man Alive program." Id. ¶ 90.

On July 26, 2024, plaintiff was moved from the "4th floor west wing in 300 pod cell 19" ("SCMJ Housing Unit") to "JKF-200 pod, bunk 63" ("RCCC Housing Unit")[3] in retaliation for filing his religious grievances. Id. ¶¶ 86, 95. At the SCMJ Housing Unit, the showers "were with hot water" and the food, although non-kosher, "was plentiful with flavor." Id. ¶¶ 87, 91. However, at the RCCC Housing Unit, the showers are "freezing cold," "the food is mostly half cooked or raw," and neither plaintiff's NA sessions, his custodial classes, nor the Man Alive program are offered. Id. at 16-17 ¶¶ 96, 97, 104, 107, 108. Plaintiff alleges that he has personally witnessed several inmates suffer from food poisoning. Id. at 16 ¶ 98. Plaintiff also alleges that he "was warned [by inmates] not to grieve custody for anything" and that doing so results in having everyone in the block's personal property being confiscated and violence incited against the griever. Id. ¶¶ 99, 100. In addition, plaintiff alleges that other peers told him that being housed at JFK serves as punishment for grievances. Id. ¶ 101.

Plaintiff alleges that due to his transfer to RCCC, he has "suffered and continues to suffer tooth pain" because his place in line for dental and ophthalmology services was terminated, forcing him to file additional grievances. Id. at 17 ¶¶ 105-106.

---

[3] Plaintiff does not specify whether "4th floor west wing in 300 pod cell 19" is in SCMJ or RCCC; however, later in his complaint, he states that "while he was housed at SCMJ," he received family visits but can no longer receive family visits "at Sacramento County Rio Consumnes Correction Center." Accordingly, the undersigned interprets the "4th floor west wing in 300 pod cell 19" to be in SCMJ.

Plaintiff further alleges that at SCMJ, he was afforded two 45-minute family visits while a sentenced inmate is allowed three 45-minute visits per week. Id. at 18 ¶¶ 111-112. Plaintiff alleges that he can no longer receive family visits because his fiancée and children use public transit to meet him, but RCCC is inaccessible by public transit, and other rideshare options, such as Uber, are too expensive. Id. ¶¶ 113, 112(a).[4] Since being moved to RCCC, plaintiff has not received a single visit from his family and alleges that he is "effectively cut off from his loved ones" because "even phone calls have begun to be to [sic] expensive." Id. ¶ 113(a).

In his request for relief, plaintiff seeks monetary damages of $80,000 from defendant Sacramento County, $20,000 each from Defendants Doe SCMJ and RCCC Facility Commanders, $20,000 from defendant Anderson, and $150 from defendant Bell for each day plaintiff is forced to ingest blood. Id. at 24. Plaintiff also seeks reimbursement of court fees from each named defendant. Id. In addition, plaintiff seeks injunctive relief, demanding commencement of his kosher diet, and class action certification for all similarly situated individuals and appointment of class counsel. Id.

## GENERAL LEGAL STANDARDS

### I.      42 U.S.C. § 1983

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

### II.     Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v.

---

[4] Plaintiff's paragraph numbering becomes unordered around paragraph 112. The paragraph 112 cited here should be paragraph 114, but is repeated as 112. The undersigned will refer to it as 112(a). Accordingly, the repeated paragraph 113 will be referred to as paragraph 113(a).

Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's "personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted). In other words, "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

## DISCUSSION

### I.    First Amendment Free Exercise of Religion

#### A.  Legal Standard

Prisoners retain their First Amendment rights, including the right to exercise religious practices and beliefs. See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987). However, the free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security." McElyea, 833 F.2d at 197; see also Al Saud v. Days, 36 F.4th 949, 957 (9th Cir. 2022) (holding that prisoner rights under the Free Exercise Clause are "necessarily limited by institutional objectives and by the loss of freedom concomitant with incarceration"). To implicate the Free Exercise Clause, a plaintiff must show both that (1) their belief is sincerely held and rooted in religious belief, see Long v. Sugai, 91 F.4th 1221, 1337 (9th Cir. 2024); and (2) that the government action in question "substantially burdens the practice of his or her religion," Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015). A claim is "rooted in religious belief" if it derives from religion, as opposed to arising from "political, sociological, or philosophical views or a merely personal moral code." See United States v. Seeger, 380 U.S. 163, 853-54 (1965); Callahan v. Woods, 658 F.3d 679, 683 (9th Cir. 1981). The crux of the sincerity inquiry is whether a plaintiff's proffered belief is "truly

7

held," Seeger, 380 U.S. at 185, as "the First Amendment does not extend to 'so-called religions … which are obviously shams and absurdities and whose members are patently devoid of religious sincerity," Callahan, 658 F.2d at 683.  A sincerity analysis should be undertaken "with a light touch, or judicial shyness" and is "almost exclusively limited [to] a credibility assessment." Varkonyi v. United Launch All., LLC, No. 2:23-CV-00359-SB-MRW, 2024 WL 1677523, at *3 (C.D. Cal. Feb. 21, 2024) (citing Moussazadeh v. Tex. Dep't of Crim. Just, 703 F.3d 781, 792 (5th Cir. 2012).  Accordingly, "the 'truth' of a belief is not open to question," Seeger, 380 U.S. at 185, nor is the belief's centrality to one's faith or the validity of one's interpretations of those creeds dispositive of sincerity, see Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). Instead, sincerity turns on indicia of genuine devotion to the proffered religion and relevant practice.  See Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (finding that plaintiff was sincere in his belief where there was no evidence in the record challenged his Muslim faith).

"[A] prisoner's Free Exercise Clause claim will fail if the state shows that the challenged action is reasonably related to legitimate penological interests," Al Saud, 36 F.4th at 957, and the legitimacy of such religious regulation is analyzed using the four-factor test gleaned from Turner v. Safley, 482 U.S. 78 (1987), id., Long, 91 F.4th at 1337.  "These factors are: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials." Human Rights Def. Cntr., Inc. v. Uttecht, 161 F.4th  1141, 1152 (9th Cir. 2025).

### B.  Analysis

The undersigned finds that plaintiff has adequately stated a free exercise of religion claim against defendant Bell in his individual capacity but not in his official capacity.  In addition, plaintiff fails to state a claim against defendants Sacramento County, Doe Facility Commanders in either capacity, and Anderson in either capacity.

////

###### i.    Defendant Bell

Plaintiff has a well-established right to have his religious diet accommodated. McElyea, 833 F.2d at 198. Moreover, plaintiff's allegations setting forth his knowledge and commitment to the Jewish faith sufficiently demonstrate sincerity for the purposes of screening. Accordingly, defendant Bell's alleged refusal to admit plaintiff into SCMJ's kosher diet program unlawfully deprived him of "food sufficient to sustain [him] in good health that satisfies the dietary laws of [his] religion. Id. Therefore, the undersigned finds that plaintiff has stated a prima facie First Amendment free exercise of religion claim against defendant Bell.

However, plaintiff fails to adequately state a claim against defendant Bell in his official capacity. A suit against a municipal officer in their official capacity is essentially a suit against the municipality itself. Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008) ("An official capacity suit against a municipal officer is equivalent to a suit against the entity."). In order to impose liability on a municipal entity, a plaintiff must identify a written policy or longstanding custom attributable to the entity that reflects deliberate indifference to his constitutional rights. See Monell, 436 U.S. at 694; AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012); Castro v. County of Los Angeles, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc). Plaintiff has not identified a policy, written or customary that reflects deliberate indifference to his right to the free exercise of his religion and, therefore, fails to state a valid claim against defendant Bell in his official capacity.

###### ii.    Defendant Sacramento County

Plaintiff has not adequately stated a free exercise of religion claim against defendant Sacramento County because he does not properly identify a challenged policy that reflects deliberate indifference to his right to free exercise of religion. Plaintiff alleges in a conclusory fashion that the unlawful denial of his kosher diet is due to "the polices of [SCMJ and RCCC]" and "[d]efendants [Bell] and [Anderson] enforcing the policies[.]" ECF No. 1 at 20, ¶¶ 124-25. However, plaintiff does not specify whether the referenced policy is a written procedure or a longstanding practice constituting a standard operating procedure of defendant Sacramento County.

Even where the undersigned liberally construes the offering of a kosher diet program and conducting of an eligibility screening interview as standard operating procedure, plaintiff fails to explain how such procedure *violates* his rights instead of protects them.  Plaintiff alleges that on July 9, 2024, defendant Bell interviewed him for the kosher religious program, and he was ultimately denied a kosher diet due to a finding of insincerity.  Id. at 7 ¶ 30; 13, ¶¶ 72-73.  From plaintiff's allegations, it is clear that SCMJ had an established program accommodating plaintiff's religious practices, that a standard screening procedure existed for program eligibility, and that the procedure was followed in plaintiff's case.  The ultimate denial in his particular case does not necessarily make the program itself, or the screening process by which eligibility is determined, unlawful.  Indeed, a policy enabling inmates to apprise prison officials of their religious practices and receive the corresponding accommodations is a paradigm example of what the First Amendment commands.  Moreover, because counties "cannot be held vicariously liable under § 1983 for the actions of their employees," Monell, 436 U.S. at 691, 694, defendant Bell's potential liability for denying plaintiff a kosher diet cannot be imputed to defendant Sacramento County.  For all these reasons, plaintiff has not stated a valid claim against defendant Sacramento County.

### iii.   Defendant Doe Facility Commanders

Plaintiff also brings suit against defendant Doe SCMJ and RCCC Facility Commanders in both their official and personal capacities.  The undersigned finds that plaintiff has not adequately stated a claim against either defendant in either capacity as explained below.

First, Defendant Facility Commanders, in their official capacities, are representatives of Sacramento County and are, therefore, "persons" that may be held liable for constitutional violations under section 1983.  However, as discussed above, in order to properly plead a Monell claim, plaintiff must identify a written policy or longstanding custom attributable to the county or jail that reflects deliberate indifference to his constitutional rights.  Plaintiff has not done so.  Therefore, plaintiff has not stated a valid claim against either defendant Facility Commander in their official capacity.

Second, a supervisor, or someone in a like-role of authority as defendant Facility Commanders, may be held liable under section 1983 for "his [or her] own culpable action or

10

inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1207. This may be established by a plausible showing of the supervisor's "personal involvement in the constitutional deprivation or … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Id. However, plaintiff fails to plausibly allege what actions the Facility Commanders took that demonstrate either their direct or proximate participation in causing his injury. Without any factual details at all about their involvement in his alleged injury, the undersigned cannot infer anything about the defendant Facility Commanders' liability and finds that plaintiff fails to state a claim against either in their personal capacity.

### iv.    Defendant Anderson

Liberally construed, plaintiff alleges that defendant Sgt. Anderson violated his First Amendment right to free exercise of religion by signing the response to his second grievance regarding the denial of his kosher diet request. Although plaintiff does not disclose the contents of the grievance response, the undersigned reasonably infers that the response again denied plaintiff's request for a kosher diet, as plaintiff, presumably unsatisfied with the outcome of pursuing administrative remedies, now turns to this Court for relief. However, plaintiff has failed to state a cognizable claim against defendant Sgt. Anderson because "a prison official's involvement in the review or resolution of inmate grievances, without more, is not actionable under Section 1983." Buskirk v. Johnson, No. CV 21-9065-MWF (JEM), 2023 WL 6851734, at *6 (C.D. Cal. May 31, 2023) (citing Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)), report and recommendation adopted, No. CV 21-9065-MWF (JEM), 2023 WL 6851737 (C.D. Cal. June 27, 2023).

### II.    First Amendment Retaliation

#### A.  Legal Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

11

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559 567-68 (9th Cir. 2005) (citations omitted). Filing an inmate grievance is a protected action under the First Amendment. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). A prison transfer may also constitute an adverse action. See Rhodes, 408 F.3d at 568 (recognizing an arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault as retaliation for filing inmate grievances); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (finding that a retaliatory prison transfer and double-cell status can constitute a cause of action for retaliation under the First Amendment).

### B. Analysis

The undersigned finds that plaintiff has not adequately stated a retaliation claim against any of the defendants in either their official or personal capacity as explained below.

#### i. Defendant Sacramento County

Plaintiff fails to properly identify either a written policy or a longstanding practice, attributable to defendant Sacramento County, that reflects deliberate indifference to his right to file grievances. Plaintiff alleges that he was transferred from the SCMJ Housing Unit to the RCCC Housing Unit in retaliation for the grievances he filed. ECF No. 1 at 15-16, ¶ 95. However, plaintiff does not allege that the transfer was carried out pursuant to any policy, let alone one designed to punish inmates for grieving or otherwise chill the exercise of their First Amendment right to do so. While plaintiff does allege that he was told by other inmates that it is common practice to be housed at RCCC as a punishment for filing grievances, id. at 16, ¶ 101, he has not sufficiently alleged that such a practice transcends mere inmate belief and conjecture or independent correctional officer misconduct. Accordingly, the undersigned finds that plaintiff has not adequately stated a claim against defendant Sacramento County.

#### ii. Defendant Doe Facility Commanders

Similarly to plaintiff's free exercise of religion claim, he fails to state a claim against either defendant Facility Commander in either capacity. As discussed above, plaintiff has not identified a written policy or longstanding custom, attributable to the county or either jail, that provides for inmate transfer to RCCC in response to filing grievances. Therefore, plaintiff has

12

not stated a claim against either defendant Facility Commander in their official capacities. Plaintiff also fails to allege any facts demonstrating how either defendant Facility Commander directly participated in, or proximately caused, his transfer to RCCC.  Accordingly, plaintiff has not stated a claim against either defendant Facility Commander in their personal capacity either.

### iii.   Defendants Anderson & Bell

Plaintiff also fails to state a retaliation claim against both defendants Anderson and Bell in either capacity.

First, addressing official capacity, plaintiff fails to adequately state a claim against either defendant because he has not identified a policy, written or customary, that reflects deliberate indifference to his right to file grievances.  Therefore, plaintiff has not adequately pled a Monell claim in order to hold either defendant liable in their official capacity.

Second, as to personal capacity, plaintiff fails to adequately state a claim against either defendant because (1) he has not linked defendant Anderson or Bell to his transfer to RCCC; and (2) he does not provide any factual support for the conclusion that he was transferred *because of* the filing of grievances.  Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff, demonstrated by defendant's personal involvement, instigation of third-party action, or the knowing failure to intervene in the deprivation of his rights.  See Monell, 436 U.S. at 694; Rizzo, 423 U.S. at 370-71; Starr, 652 F.3d at 1207-08.  Plaintiff has not satisfactorily established a connection between defendants Anderson or Bell and the alleged interference with his right to file grievances by any qualifying means.  Plaintiff alleges that both defendants signed the response to his grievance, which was returned shortly before he was transferred.  ECF No. 1 at 15 ¶¶ 93-94. However, plaintiff does not disclose the contents of the response or explain how defendants' response establishes their participation in, or responsibility for, his transfer.  Aside from signing his grievance response, plaintiff does not allege what each defendant specifically did to personally cause plaintiff's transfer to RCCC.

Although plaintiff alleges that he "was … told by other peers that you get housed at JKF as punishment for grievances,"  ECF No. 1 at 16 ¶ 101, this is insufficient to make his retaliation

claim plausible.  While allegations based on hearsay are presumed true at the screening stage, AK Futures LLC v. LCF Labs Inc., No. 8:21-cv-2121-JVS ADSX, 2022 WL 2784409, at *3 (C.D. Cal. June 24, 2022) (citing Klarfield v. United States, 944 F.2d 583, 585 (9th Cir. 1991)), plaintiff does not provide enough facts for the undersigned to reasonably infer that his transfer was, indeed, retaliatory and that this alleged general rule, accordingly, applies to him.  Without more, plaintiff's allegations do not "nudge [his] claim[] across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 555-57.

### III.   Fourteenth Amendment Due Process for Pretrial Detainees

Plaintiff alleges being subjected to various subpar conditions while detained with respect to his (1) family visitation rights; (2) rehabilitative programming access; and (3) receipt of basic necessities.  The undersigned liberally construes the complaint as raising Fourteenth Amendment due process claims.

#### A.  Legal Standard

"The more protective fourteenth amendment standard applies to conditions of confinement when detainees ... have not been convicted of a crime." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (internal quotations and citations omitted).  "[W]hen the state detains an individual on a criminal charge, that person, unlike a criminal convict, 'may not be punished prior to an adjudication of guilt in accordance with due process of law.'" Jones, 393 F.3d at 931-32 (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)).

The proscription against punishment before trial can be violated in multiple ways.  Most obviously, it can be violated if restrictions are "imposed for the purpose of punishment." Bell, 441 U.S. at 538; see also Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) (quoting Bell, 441 U.S. at 538) ("'[P]unishment' can consist of actions taken with an 'expressed intent to punish.'").  If a jailer lacks express intent to punish, "a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" Kingsley, 576 U.S. at 389 (quoting Bell, 441 U.S. at 561).

14

To "constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004). "Absent evidence of express punitive intent, it may be possible to infer a given restriction's punitive status 'from the nature of the restriction.'" Pierce, 526 F.3d at 1205 (quoting Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002)). A restriction may also be punitive if it involves a "reckless disregard for inmates' health or safety." Norbert v. City & Cnty. of San Francisco, 10 F.4th 918, 928 (9th Cir. 2021). There is no due process violation, however, if restrictions are "but an incident of some other legitimate government purpose." Bell, 441 U.S. at 538.

### B.  Analysis: Family Visitation & Rehabilitative Programming

Plaintiff raises two distinct Fourteenth Amendment claims regarding his family visitation rights. First, plaintiff challenges the constitutionality of SCMJ's policy that provides less family visits for pretrial detainees than convicted inmates. Although plaintiff categorizes this latter claim as an equal protection violation, the Court liberally construes this claim as a challenge to the conditions of his confinement as a pretrial detainee pursuant to the Fourteenth Amendment's substantive due process clause. Second, plaintiff complains of his reduced ability to participate in family visitation at RCCC due to the facility's inconvenient location and the increased expenses required for his family to travel there. Similarly, plaintiff complains of his inability to participate in rehabilitative programming because RCCC does not offer the classes that SCMJ does. The undersigned finds that only the first claim adequately states a cognizable Fourteenth Amendment claim.

### i.  SCMJ Policy's Pretrial Detainee Rights

With respect to the first claim, the undersigned finds that plaintiff has adequately stated a substantive due process claim against defendant Sacramento County, defendant Doe SCMJ Commander in both capacities, and defendants Anderson and Bell in their official capacities based on his reduced family visitation rights compared to those of convicted inmates. Where a pretrial detainee is held "under conditions identical to, similar to, or more restrictive than those under which … [he or she] would face upon commitment," such conditions are presumed punitive

15

and necessarily violate the Fourteenth Amendment.  Jonas, 393 F.3d at 934.  Accordingly, the fact that plaintiff, as a pretrial detainee, is categorically afforded less family visits than convicted inmates at SCMJ violates the greater liberty protections he is entitled to under the Fourteenth Amendment.  Plaintiff properly identifies the written policy that imputes liability to defendant Sacramento County as SCMJ handbook's "Social and Legal Visits" for pretrial detainees.  Plaintiff alleges that pursuant to this policy, he is "afforded less [visitation] rights and privileges" than a convicted person." ECF No. 1 at 23.  The policy at issue explicitly provides for fewer visitation rights for pretrial detainees even though they have not been convicted of a crime and are legally entitled to less restrictive conditions of confinement.  See Jonas, 393 F.3d at 924.  Therefore, the undersigned finds that for screening purposes, plaintiff has alleged a prima facie due process claim based on the frequency of family visitation offered to him as a pretrial detainee against defendant Sacramento County, defendant Doe SCMJ Commander in his or her official capacity, and defendants Anderson and Bell in their official capacities.  In addition, the undersigned finds that defendant Doe SCMJ Commander's alleged implementation of the visitation policy demonstrates culpable conduct sufficient to implicate personal liability.  Supervisors may be held liable for "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."  Hyde v. City of Wilcox, 23 F.4th 863, 874 (9th Cir. 2022).  The defendant commander's voluntary decision to put a policy in place that explicitly affords pretrial detainees fewer visitation rights reflects clear disregard for pretrial detainees' constitutional entitlement to less restrictive conditions of confinement than convicted inmates.  The requisite causal connection is also satisfied because a commander's implementation of an unlawful policy can reasonably be said to "set[] in motion a series of acts by others … which [the commander] knew or reasonably should have known would … inflict constitutional injury," Starr, 652 F.3d at 1207, as all SCMJ employees are obligated to carry out the policies put in place at the jail.  In other words, the SCMJ employees' deprivation of plaintiff's due process rights can be "directly attributed to [the SCMJ commander]."  Id. at 1205.  Accordingly, plaintiff has adequately stated a

16

Fourteenth Amendment due process claim against defendant Doe SCMJ Commander in his or her personal capacity.

However, plaintiff fails to state a claim against defendant Doe RCCC Commander in either capacity and defendants Anderson and Bell in their personal capacities.  First, addressing defendant Doe RCCC Commander, the visitation policy plaintiff challenges is specific to SCMJ and, therefore, cannot impute liability to a commander at RCCC, a separate and independent facility.  Plaintiff does not allege that SCMJ's policies extend to RCCC or that RCCC has implemented its own like rule.  Accordingly, without properly identifying an RCCC policy or longstanding practice that reflects deliberate indifference to pretrial detainee rights to less restrictive conditions of confinement, plaintiff cannot hold defendant Doe RCCC Commander liable in his or her official capacity.  Plaintiff also fails to plausibly allege what actions defendant Doe RCCC Commander took that demonstrate participation in causing his injury, whether by implementation of a policy or otherwise.  Accordingly, plaintiff has not adequately stated a claim against defendant Doe RCCC Commander in his or her personal capacity.  In the first place, plaintiff does not even allege that at RCCC, his visitation rights are more restricted than those of convicted inmates.  Without a cognizable constitutional deprivation, plaintiff cannot state a due process claim against defendant Doe RCCC Commander at all.  Next, regarding defendants Anderson and Bell, plaintiff fails to state a claim against either in their personal capacities because he has not established the necessary link between each defendant and the alleged constitutional deprivation required for section 1983 liability.  Namely, plaintiff does not explain what either defendants' role was in contributing to the deprivation of his right to less restrictive conditions than convicted inmates.. See Starr, 652 F.3d at 1207-08.

### ii.  Reduced Family Visitation & Rehabilitative Programming at RCCC

With respect to the second claim, the undersigned finds that plaintiff has not adequately stated a substantive due process claim against any named defendant.  As a preliminary matter, higher courts have found that pretrial detainees do not have a protected liberty interest in visitation or program participation, making their deprivation alone insufficient to constitute a due process violation.  See Block v. Rutherford, 468 U.S. 576 (1984) (upholding a blanket prohibition

17

on contact visitation for pretrial detainees as reasonably related to a legitimate government interest in security); Myers v. California Dep't of Corr. & Rehab., No. 2:20-CV-0153 DB P, 2020 WL 5366341, at *4 (E.D. Cal. Sept. 8, 2020) (recognizing lack of right to educational, vocational, or rehabilitative programs for both pretrial detainees and convicted inmates) (citing Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (no Eighth Amendment right to programming)); Rizzo v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985) (no Fourteenth Amendment right to programming)).  However, the undersigned does not understand plaintiff's claim as asserting a constitutional right in visitation and program participation so much as asserting the right to be free from punishment-like conditions.  Notwithstanding pretrial detainees' clearly established right to be free from punishment, the undersigned finds that plaintiff fails to demonstrate that his reduced family visitation and programming participation rights amount to punishment.  Plaintiff speculates that RCCC intentionally implements a "retalliatory [sic] culture" "meant to violate people's rights," under which culture he has "effectively been cut off from his loved ones" and deprived of the ability to participate in any of his rehabilitation classes.  ECF No. 1 at 17-19.  However, he does not allege any facts to support the plausibility of such intentional punishment.

While lack of express intent to punish does not preclude a Fourteenth Amendment claim, a plaintiff must still at least allege facts that support either an inference that (1) punishment was intended from the nature of the action; (2) the challenged action was not rationally related to a legitimate nonpunitive purpose; or (3) the challenged action was excessive in relation to the proffered purpose.  See Pierce, 526 F.3d at 1205 ; Kingsley, 576 U.S. at 389.  Plaintiff has not alleged sufficient factual content for the undersigned to reasonably infer that his reduced family visitation and program participation rights were intended as punishment or otherwise a product of arbitrary or excessive action.  Moreover, even if plaintiff had adequately established punitive intent, he fails to identify a necessary controlling written policy or longstanding custom, attributable to the county or RCCC, to hold any defendant liable in their official capacity.  Plaintiff also fails to explain how each defendant contributed to the alleged subpar family visitation and programming conditions in order to satisfy the § 1983 linkage requirement for establishing personal liability.

**C.  Analysis: Confinement Conditions at RCCC**

       **i.     Basic Necessities**

The undersigned finds that plaintiff has not adequately stated a claim for confinement conditions against any named defendant.  While "freezing cold showers" and "half-cooked or raw food.," ECF No. 1 at 16, objectively present risk of serious harm, plaintiff nonetheless fails to state a claim because he has not sufficiently alleged <u>Monell</u> liability or § 1983 linkage. Regarding <u>Monell</u> liability, Plaintiff does not explicitly identify a written policy, attributable to the county or RCCC, that reflects deliberate indifference to his right to adequate confinement conditions.  Nor does he allege facts that tend to show that the provision of subpar conditions constitutes a standard operating procedure at RCCC.  Plaintiff  specifically alleges that the showers are freezing cold and the food is inedible "at JKF-200 pod, Bunk 63."  <u>Id.</u>  However, even assuming that the shower and food quality at the RCCC Housing Unit is consistently inadequate, without more detail, the undersigned cannot reasonably infer that the conditions in plaintiff's housing area are representative of the conditions at RCCC as a whole.  Accordingly plaintiff fails to state a claim against defendant Sacramento County or any named defendant in their official capacity.  Plaintiff also fails to explain how each defendant was either directly or proximately involved in subjecting him to the alleged inadequate conditions at RCCC. Accordingly, plaintiff fails to state a claim against all defendant in their personal capacities.

**D.  Analysis: Deliberate Indifference to Serious Medical Need**

The undersigned finds that plaintiff has not adequately stated a claim for deliberate indifference against any named defendant.  To state a claim for deliberate indifference, a pretrial detainee must allege that "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." <u>Gordon v. Cnty. of Orange</u>, 888 F.3d 1118, 1125 (9th Cir. 2018).  "The mere lack of

due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Id. "Thus the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." Id. Plaintiff alleges that due to his transfer to RCCC, his position in line for medical services at SCMJ was terminated, and, as a result, he had to file medical grievances "to get back on the list" at RCCC. ECF No. 1 at 17, 22. However, plaintiff fails to plausibly establish that this delay in receiving medical services stems from indifference to his needs as opposed to the incidental consequences of facility transfer. Plaintiff also fails to allege facts supporting an inference that any named defendant was aware or should have been aware of his needs. Accordingly, without a plausible showing of delay caused by something more than negligence, plaintiff has not made out a prima facie case for deliberate indifference against any defendant.

### IV.     Plaintiff's Request for Class Certification & Appointment of Counsel

As part of his request for relief, plaintiff seeks class certification "for similarly situated individuals" without identifying any such pretrial detainees in his situation. ECF No. 1 at 24. A party requesting class certification must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Plaintiff makes no effort to meet any of these four requirements.[5] As a result, plaintiff's request for class certification is denied.

### OPTIONS FROM WHICH PLAINTIFF MUST CHOOSE

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

### I.     Option 1

Plaintiff may choose to proceed immediately with the First Amendment free exercise of

---

[5] Since plaintiff fails to demonstrate these basic requirements, the Court need not address his request for counsel to represent the members of the class.

religion claim against defendant Bell and the Fourteenth Amendment due process claim (SCMJ visitation policy) against defendants Sacramento County, Doe SCMJ Commander, Anderson, and Bell. By choosing this option, plaintiff will be agreeing to voluntarily dismiss the alleged (1) First Amendment free exercise of religion claims against defendants Sacramento County, Doe Facility Commanders, and Anderson; (2) First Amendment retaliation claim against all defendants; (3) Fourteenth Amendment due process claim (SCMJ visitation policy) against defendant Doe RCCC Commander; (4) Fourteenth Amendment due process claims (reduced family visitation and program participation) against all defendants; (5) Fourteenth Amendment confinement conditions claim against all defendants; and (6) Fourteenth Amendment deliberate indifference claims against all defendants

## II. Option 2

Plaintiff may choose to file an amended complaint to fix the problems described in the **ANALYSIS** section of each claim. If plaintiff chooses this option, the court will set a deadline by subsequent order to give plaintiff time to file an amended complaint.

## LEGAL STANDARDS GOVERNING AMENDED COMPLAINTS

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo, 423 U.S. at 370-71. Also, the complaint must specifically identify how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. See Local Rule 220. This is because, as a general rule, an amended complaint replaces the prior complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Therefore, in an amended complaint, every claim and every defendant must be included.

21

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for leave to proceed in forma pauperis (ECF No. 6) is GRANTED.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

3. Plaintiff's request for class certification is denied without prejudice.

4. Plaintiff does not state a cognizable (1) First Amendment free exercise of religion claim against defendants Sacramento County, Doe Facility Commanders, or Anderson; (2) First Amendment retaliation claim against any defendant; (3) Fourteenth Amendment due process claim (SCMJ visitation policy) against defendant Doe RCCC Commander; (4) Fourteenth Amendment due process claim (reduced family visitation and program participation) against any defendant; (5) Fourteenth Amendment confinement conditions claim against any defendant; or a (6) Fourteenth Amendment deliberate indifference claim against any defendant.

5. Plaintiff has the option to proceed immediately on his First Amendment free exercise of religion claim against defendant Bell and his Fourteenth Amendment substantive due process claim against defendants Sacramento County, Doe SMCJ Commander, Anderson, and Bell as set forth in each claim's respective **ANALYSIS** section, or to file an amended complaint.

6. Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

7. If plaintiff does not return the form, the court will assume that he is choosing to

////

/////

////

////

////

22

proceed on the complaint as screened and will recommend dismissal without prejudice of the enumerated claims he has failed to adequately allege.

DATED: April 24, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

23

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDNEY ROSS DEEGAN, III, | No.  2-24-cv-02471-SCR P |
| Plaintiff, | |
| v. | NOTICE OF ELECTION |
| SACRAMENTO COUNTY ET AL., | |
| Defendants. | |

Check one:

_____ Plaintiff wants to proceed immediately on his First Amendment free exercise of religion claim against defendant Bell and Fourteenth Amendment due process claim (SCMJ visitation policy) against defendants Sacramento County, Doe SCMJ Commander, Anderson, and Bell without amending the complaint.  Plaintiff understands that by choosing this option, his remaining claims will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

_____ Plaintiff wants time to file an amended complaint.

DATED:_____

_____
Sidney Ross Deegan, III
Plaintiff pro se

1